# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
    **Plaintiff,**

  v.                                      Case No. 18-CR-163

**NEQUANN TERRY**
    **Defendant.**

## DECISION AND ORDER

Defendant Nequann Terry moves for early termination of his supervised release. For the reasons that follow, the motion will be denied.

**I.**

Defendant pleaded guilty to conspiracy to distribute 100 grams or more of heroin, 21 U.S.C. §§ 846, 841(b)(1)(B), and two counts of distribution of heroin, 21 U.S.C. §§ 841(a)(1), (b)(1)(C). As detailed in defendant's pre-sentence report (PSR), in March 2017 the FBI initiated an investigation into a heroin trafficking organization headed by James Harris, defendant's step-father. Sources indicated that Harris regularly fronted heroin to defendant for resale, and agents conducted two controlled buys of heroin from defendant. (PSR ¶¶ 13-18.) The PSR determined that defendant was responsible for at least 1.2 kilograms of heroin based on the controlled buys and the amounts fronted to him by Harris. (PSR ¶ 25.)

Defendant's prior record included five municipal theft cases in 2013 and 2014, carrying a concealed weapon (municipal) in 2014, and two separate possession with intent to distribute heroin cases in 2016, for which he received concurrent sentences of 30 months in prison. (PSR ¶¶ 37-44.) In both of the drug cases, he was originally given a deferred prosecution with

participation in the Milwaukee County drug treatment court, but he failed to comply and the agreements were revoked. Defendant was released from the state prison sentences to extended supervision in December 2017, but he was revoked in November 2018 following his arrest in this case. (PSR ¶¶ 42, 44.) The PSR further documented defendant's significant substance abuse problem, with regular use of heroin prior to his arrest. (PSR ¶¶ 68-71.) Finally, the PSR indicated that defendant dropped out of school (although he was working on his HSED and GED in custody) and that he had a limited work record. (PSR ¶¶ 72-75.)

Defendant qualified as a career offender based on his two previous drug trafficking convictions, producing a guideline range of 188-235 months in this case. (PSR ¶ 30-34, 45-48, 80.) At defendant's September 27, 2019 sentencing hearing, I adopted the PSR's calculations but for a variety of reasons found the guideline range greater than necessary, imposing a sentence of 60 months in prison followed by 4 years of supervised release. (R. 207, 208.)

Defendant completed the prison sentence and commenced supervision on March 21, 2022. On March 20, 2024, defendant filed the instant motion for early termination, indicating that he had become a different person, stayed out of trouble, avoided drugs, followed the rules, and maintained employment. He further indicated that he and his family traveled a lot, and he did not want to keep asking for permission to go places. (R. 293 at 1.) He concluded that he had learned his lesson and was ready to move forward in life. (R. 293 at 2.) I directed the probation office to file a report regarding defendant's conduct and compliance on supervision, and the government to file a response to the motion. (R. 296.)

In its April 23, 2024 report, the probation office indicated that defendant had maintained stable employment since his release, working for several different employers. After initially living with his mother, he later established an independent residence in Milwaukee. He also

2

maintained sobriety throughout the supervision term. Defendant had one instance of non-compliance while on supervised release. On July 31, 2023, he received citations for "Co-Possession of Marijuana" and imprudent speed. According to police reports, defendant was stopped for speeding. The officer observed defendant and his girlfriend in the vehicle, and noticed a scent of marijuana emanating from the vehicle. Defendant's girlfriend also had an open alcoholic beverage in the vehicle. Defendant passed all field sobriety tests. (R. 297 at 2.) The responding officer advised that defendant requested his girlfriend be forgiven for the small amount of marijuana that was in her purse; defendant further asked that the officer issue him the citation rather than his girlfriend because she was a good person who made a poor choice, and he wanted to protect her clean criminal record. (R. 297 at 2-3.) Defendant subsequently provided a urine test to the probation office, which yielded negative results for illicit substances. (R. 297 at 3.)

      The report noted that, according to the U.S. Probation Guide Volume 8, Part E, there is a presumption in favor of recommending early termination for a defendant who has been under supervision for at least 18 months and (a) does not meet the criteria of a career drug offender or career criminal or has not committed a sex offense or engaged in terrorism; (b) presents no identified risk of harm to the public or victims; (c) is free from any court-reported violations over a 12-month period; (d) demonstrates the ability to lawfully self-manage beyond the period of supervision; (e) is in substantial compliance with all conditions of supervision; and (f) engages in appropriate pro-social activities and receives sufficient pro-social support to remain lawful well beyond the period of supervision. The probation office indicated that defendant did not meet all of these criteria. He was a career drug offender, based on his two prior drug offenses, and his term of community supervision following imprisonment in those

cases was revoked due to his indictment in this federal case. Additionally, he received citations for speeding and co-possession of marijuana on July 31, 2023, and thus did not meet subsection (c). The probation office did note that defendant was stable in the community with respect to his residence and employment status, had paid his special assessment, his urine tests had been negative for controlled substances, and he did not present a known risk of harm to the public. In general, he was seen face to face no less than every 120 days and was cooperative with the officer. (R. 297 at 3.)

In its May 1, 2024 response, the government indicated that it did not currently favor early termination of supervised release. However, the government did not oppose reevaluating the request at a time when the probation office favored early termination. (R. 298 at 1.) I permitted defendant to file a reply. (R. 299.)

In his May 14, 2024 reply, defendant indicated that he did not want to keep asking to travel and do the things he wants to do. He wanted to be done with supervision and live a normal life. (R. 300 at 1.) Defendant did not address the non-compliance discussed in the probation office report.

On May 16, 2024, on the petition of the probation office, I issued a warrant to act as a detainer following defendant's arrest by state authorities on armed robbery and felon in possession of a firearm charges. (R. 301.)

**II.**

Pursuant to 18 U.S.C. § 3583(e),

The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) —

(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release,

4

pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice[.]

The statute's introductory clause directs the court to consider: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed—(B) to afford adequate deterrence to criminal conduct, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed correctional treatment; (4) the kinds of sentences available; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a). "[A]lthough a court need not make explicit findings as to each of the factors, the record must reveal that the court gave consideration to the § 3553(a) factors." United States v. Lowe, 632 F.3d 996, 998 (7th Cir. 2011).

The court may grant early termination under sub-section (e)(1) if: (1) the defendant has completed at least one year of supervision, (2) the government has been given notice and an opportunity to be heard, and (3) termination is warranted based on the defendant's conduct and the interest of justice. United States v. Witzlib, No. 13-CR-99, 2016 U.S. Dist. LEXIS 65551, at *4 (E.D. Wis. May 18, 2016). Defendant has completed more than one year of supervision, and the government has been afforded a chance to respond. The issue is whether termination is warranted by defendant's conduct and the interest of justice.

The district court possesses wide discretion in making this determination. United States v. Hook, 471 F.3d 766, 771 (7th Cir. 2006). In exercising that discretion, courts have generally concluded that the conduct of the defendant sufficient to warrant termination should include more than mere compliance with the conditions of supervised release, as that is what is

5

expected of all persons on supervision. Witzlib, 2016 U.S. Dist. LEXIS 65551, at *4-5; see also United States v. Taylor, 729 Fed. Appx. 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination under 18 U.S.C. § 3583(e)."). Courts have tended to grant early termination in cases involving some new or unforeseen circumstance, which may include exceptionally good behavior, or where continued supervision would hinder rather than foster the defendant's rehabilitation.[1] United States v. Adams, No. 06-CR-205, 2022 U.S. Dist. LEXIS 72494, at *7 (E.D. Wis. Apr. 19, 2022).

As alluded to in the probation office report, additional guidance can be found in Guide to Judiciary Policy, Volume 8: Probation and Pretrial Services, Part E: Post-Conviction Supervision. Section 360.20(c) provides that, after 18 months of supervision, there is a presumption in favor of recommending early termination for offenders who meet the following criteria: the person is not a career drug offender or career criminal; the person presents no identified risk of harm to the public or victims; the person is free from any court-reported violations over a 12-month period; the person demonstrates the ability to lawfully self-manage beyond the period of supervision; the person is in substantial compliance with all conditions of supervision; and the person engages in appropriate pro-social activities and receives sufficient pro-social support to remain lawful well beyond the period of supervision. See also U.S.S.G. § 5D1.2 cmt. n.5 (encouraging early termination in appropriate cases, e.g., where the defendant successfully completes a treatment program reducing the risk of recidivism).

---

[1]"This is not to say that the defendant must always demonstrate exceptional circumstances in order to gain early termination. The attached text is descriptive of the manner in which courts have exercised their discretion in considering such motions." United States v. Spinks, No. 08-CR-161, 2016 U.S. Dist. LEXIS 83166, at *2 n.2 (E.D. Wis. June 27, 2016).

6

The defendant bears the burden of demonstrating that early termination is warranted. Witzlib, 2016 U.S. Dist. LEXIS 65551, at *5. The court need not hold a hearing before denying a request for early termination. United States v. Reagan, 162 Fed. Appx. 912, 913 (11th Cir. 2006) (citing United States v. Nonahal, 338 F.3d 668, 671 (7th Cir. 2003)).

**III.**

Even setting aside his recent arrest on new charges, defendant fails to demonstrate that early termination is warranted. He relies on his compliance and stable reintegration, but "the court expects those on supervision to follow the rules, abstain from illegal drug use, work, and attend to their family responsibilities." United States v. Inthachack, No. 11-CR-133, 2022 U.S. Dist. LEXIS 77421, at *5-6 (E.D. Wis. Apr. 28, 2022). Defendant complains about needing to ask permission to travel, but this is a burden generally faced by persons on supervision, and defendant develops no argument that the condition is unusually onerous in his case. See United States v. Mitchell, No. 03-CR-194, 2013 U.S. Dist. LEXIS 126005, at *4 (E.D. Wis. Sept. 4, 2013) ("While asking for permission to travel may be a burden, it is one faced by every offender on supervision. Defendant does not contend that the probation office has unreasonably denied any of his requests, or that he is often called upon to travel on such short notice that he cannot first seek approval."); United States v. Gardner, No. 03-CR-194, 2012 U.S. Dist. LEXIS 147189, at *4 (E.D. Wis. Oct. 12, 2012) (denying request for early termination based on travel restrictions where the defendant did not allege that his probation officer refused any requests to leave the district). Defendant identifies no other new or unforeseen circumstance supporting a reduction of the supervision term.

The pertinent § 3553(a) factors also weigh against early termination. As indicated above, defendant participated in a large-scale heroin distribution operation. 18 U.S.C. § 3553(a)(1).

7

He has a serious prior record, which qualified him as a career offender, and he committed the instant offense while on community supervision. Given defendant's history, early termination would not be consistent with the need to protect the public and deter. 18 U.S.C. §§ 3553(a)(2)(B), (C). While defendant submitted negative drug screens during the supervision term, given his significant history of substance abuse, early termination would also be inconsistent with the need to provide for any needed correctional treatment. 18 U.S.C. § 3553(a)(2)(D).

## IV.

**THEREFORE, IT IS ORDERED** that defendant's motion for early termination (R. 293) is denied.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2024.

/s/ Lynn Adelman
LYNN ADELMAN
District Judge